UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
DOUGLAS CROMWELL, JR. and MARY    )
CROMWELL                          )
                                  )
                  Plaintiffs,     )    CIVIL ACTION
                                  )    NO. 11-12054-WGY
            v.                    )
                                  )
COUNTRYWIDE HOME LOANS, INC., and )
MORTGAGE ELECTRONIC REGISTRATION  )
SYSTEMS, INC.,                    )
                                  )
                  Defendants.     )
_____  )
```

MEMORANDUM & ORDER

YOUNG, D.J.                                September 20, 2012

## I.   INTRODUCTION

The defendants, CountryWide Home Loans, Inc., and Mortgage Electronic Registration Systems, Inc. (collectively "CountryWide") appeal from several rulings by the Bankruptcy Court in an adversary proceeding.  The plaintiffs (and debtors), Douglas and Mary Cromwell, cross-appeal on one issue.

### A.   Procedural Posture

Douglas and Mary Cromwell (the "Cromwells") brought an adversary proceeding in their Chapter 13 Bankruptcy proceeding to rescind a consumer credit mortgage on their property at 27 Irving Street in Winchester, Massachusetts.  In re Cromwell, 461 B.R. 99, 103-04 (Bankr. D. Mass. 2011) (Hillman, Bankr. J.).  The Cromwells allege violations of the Massachusetts Consumer Credit

1

Cost Disclosure Act (the "MCCCDA"), Massachusetts General Laws chapter 140D. section 1 et seq., the corollary of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1635, et seq.  In re Cromwell, 461 B.R. at 103-04.

The Cromwells claim that the violations of the MCCCDA enabled them to rescind the mortgage granted them by the Mortgage Electronic Registration Systems, Inc. ("MERS"), a nominee for CountryWide Home Loans, Inc., and sought a declaration of rescission by the Bankruptcy Court.  Id. at 104.  Further, the Cromwells argue that a rescission makes the mortgage void and that they have no tender obligation to effectuate the rescission. Id.  As a result, CountryWide's claim (the mortgage loan) would be unsecured and lose priority for purposes of their Chapter 13 bankruptcy proceedings.  Id.

The Bankruptcy Court denied motions for summary judgment on these claims[1] and conducted a trial on the adversary proceeding on May 17, 2011.  Id. at 107-08.  The parties presented five witnesses at trial and introduced thirty-eight exhibits in evidence.  Id.  The court took the matter under advisement and requested post-trial briefs.  Id. at 111.  In a carefully reasoned opinion, the Bankruptcy Court ruled for the Cromwells on both Counts I and II.  Id. at 138.

---

[1] The Bankruptcy Judge granted summary judgment on a third count with consent of both parties.

**B.    Facts**

The Bankruptcy Judge found the following facts after a trial:[2]

The Cromwells own real property at 27 Irving Street in Winchester, Massachusetts ("the Property") that has been their principal residence since they inherited it in 1985.  In re Cromwell, 461 B.R. at 104.  The Cromwells have executed thirteen mortgages with respect to the Property.  Id.  At the time of the bankruptcy petition, the Cromwells disclosed two mortgages, a first mortgage held by MERS as nominee for CountryWide, and a second mortgage held by American General Finance.  Id. at 104-05.  The Cromwells executed the note in favor of CountryWide with an original principal of $300,000 and granted the first mortgage to MERS as nominee on December 23, 2005.  Id. at 105.  The purpose of this mortgage was to discharge an existing mortgage on the property.  Id.  The Cromwells used $246,960.08 of the loan from CountryWide to pay off the balance on their existing mortgage and used the balance to pay other debts "incurred primarily for personal, household, or family purposes, and to make repairs to the Property."  Id.

Unable to make their payments to CountryWide, the Cromwells entered into two loan modification agreements that ultimately

---

[2] These facts are largely quoted from the bankruptcy opinion.

3

increased their principal balance to $334,295.15.  Id.  On August 8, 2008, the Cromwells filed a joint Chapter 13 petition.  Id. They listed the Property as having a current value of $388,600, subject to secured claims in the amount of $350,117.45.  Id. The Cromwells disclosed secured claims in the amount of $334,200.15 and $13,866.69 owed to CountryWide and American General Finance, respectively, on Schedule D.  Id.  Schedule D also reflected secured claims held by the Town of Winchester for unpaid property taxes in the amount of $1,052.25 and water and sewer charges in the amount of $998.36.  Id.  On their original Schedule C—Property Claimed as Exempt ("Schedule C"), the Cromwells claimed an exemption in the Property pursuant to Massachusetts General Laws chapter 188, section 1 in the amount of $39,534.80 (the "Homestead Exemption"), which appears to be the approximate amount of equity that remained in the Property as of the petition date.  Id. at 105-06.  The Cromwells also listed a priority federal tax claim in the amount of $318.80 and general unsecured claims totaling $68,887.71. Id.

After a creditors meeting, CountryWide filed a proof of claim indicating that the total amount of the secured claim was $359,110.65 with a prepetition arrearage of $25,431.01.  Id.  The Cromwells sought to cure the arrearage through their Chapter 13 plan while maintaining regular post-petition payments, but after CountryWide started the foreclosure process, the Cromwells

4

changed their mind.  Id.

On January 21, 2009, the Cromwells, through counsel, sent written notification to the Defendants' counsel of their election to rescind the CountryWide refinancing transaction.  Id.  On the same date, the Cromwells filed an Objection to CountryWide's secured Claim, contending that, in light of their purported rescission, CountryWide held only an unsecured claim.  Id. CountryWide and MERS disputed the validity of the rescission, and as of the bankruptcy opinion, had not taken any action to terminate the security interest or return any money or property to the Cromwells.  Id.  As a result, the Cromwells commenced the present adversary proceeding on February 20, 2009, asserting that they can rescind the CountryWide refinancing transaction because they were not provided with the correct number of copies of the Notice of Right to Cancel under the MCCCDA ("Count I"), and that the notice provided to them at the closing did not adequately disclose their rescission rights because it used the wrong statutory form ("Count II").  Ultimately, the Objection to Claim was consolidated with this adversary proceeding.  Id.

C.   **Federal Jurisdiction**

This Court has original jurisdiction over bankruptcy cases and all civil proceedings "arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(a).  The legal and factual issues on appeal arise in and are related to a

bankruptcy filed by the Cromwells.  The Court has jurisdiction to

hear the appeal pursuant to 28 U.S.C. § 158(a).  The parties

elected to proceed to District Court pursuant to 28 U.S.C. §

158(c).

## II.  DISCUSSION

### A.    Standard of Review

On appeal from a judgment in an adversary proceeding, a

district court reviews conclusions of law <u>de novo</u>, but ought

accept the bankruptcy judge's finding of fact unless they were

clearly erroneous.   <u>In re Callahan</u>, 442 B.R. 1, 5 (D. Mass.

2010).

The Supreme Court explained the plain error or clearly

erroneous standard:

> "[A] finding is 'clearly erroneous' when although there
> is evidence to support it, the reviewing court on the
> entire evidence is left with the definite and firm
> conviction that a mistake has been committed." . . . If
> the [trial] court's account of the evidence is plausible
> in light of the record viewed in its entirety, the
> [appellate court] may not reverse it even though
> convinced that had it been sitting as the trier of fact,
> it would have weighed the evidence differently.

<u>Anderson</u> v. <u>City of Bessemer City</u>, 470 U.S. 564, 573-74 (1985)

(quoting <u>United States</u> v. <u>United States Gypsum Co.</u>, 333 U.S. 364,

395 (1948)).  The district court may also "affirm the bankruptcy

court order on any ground apparent from the record on appeal."

<u>Spenlinhauer</u> v. <u>O'Donnell</u>, 261 F.3d 113, 117 (1st Cir. 2001).

6

B.   **Legal Background**

"Congress enacted the TILA in 1968 'to assure a meaningful disclosure of credit terms' and 'to protect the consumer against inaccurate and unfair credit . . . practices.'" McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 421 (1st Cir. 2007) (quoting 15 U.S.C. § 1601(a)).  Creditors who fail to meet its requirements are subject to criminal penalties and claims for damages by debtors.  Id. (citing 15 U.S.C. § 1640(a)).  The MCCCDA "mirrors its federal counterpart." Id. at 422. Accordingly, the MCCCDA is construed in accordance with the TILA. In re Fuller, 642 F.3d 240, 243 (1st Cir. 2011); Mayo v. Key Fin. Servs., Inc., 424 Mass. 862, 864 (1997) (noting that Chapter 140D was "closely modeled on the Federal Truth-in-Lending Act").  Like other Massachusetts consumer protection statutes, the MCCCDA is to be liberally construed.  In re Fuller, 642 F.3d at 243. "[A] liberal construction is one that carries out the purpose of the statute to protect the consumer against harm, resolving uncertainties where possible in favor of this objective; it does not license the undoing of bargains where no harm whatever occurred or could have occurred." Id. (affirming no rescission where plaintiffs filed five years after transaction, and date on disclosure notice might have been one day off).

Both TILA and MCCCDA were implemented through administrative regulations and both laws require that the creditor "clearly and

conspicuously disclose" the rights of borrowers, using appropriate forms that meet the requirements set forth in the regulations.  E.g., Mass. Gen. Laws ch. 140D, § 10(a).  In the case of TILA, the Federal Reserve Board ("Board") promulgated the regulations as 12 C.F.R. § 226.01 et seq., known as "Regulation Z", through authority conferred by 15 U.S.C § 1604(a).  In the MCCCDA, the Massachusetts Commissioner of Banks promulgated the regulations as Code of Massachusetts Regulations title 209 chapter 226.01 et seq., from authority in Massachusetts General Law chapter 140D, section 3(a).

Both TILA and MCCCDA provide a three business-day "cooling off" period during which a consumer can rescind a covered transaction for any reason.  15 U.S.C. § 1635(a); Mass. Gen. Laws ch. 140D, § 10(a).  In this case, the parties stipulated to facts establishing that the loan between CountryWide and the Cromwells was a "consumer credit transaction" subject to a right to rescind.  Opening Br. Appellees Douglas Cromwell, Jr. Mary Cromwell ("Appellees' Br.") 4, ECF No. 8.  An obligor has a right to rescind the transaction up to four years later if "the form of notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the commissioner or a comparable written notice, and otherwise complied with all

the requirements of this section regarding notice."[3]  Mass. Gen. Laws ch. 140D, § 10(i)(1)(b); cf. 15 U.S.C. § 1635(f) (providing for rescission up to three years after transaction for certain violations of disclosure requirements).  Thus, an inappropriate disclosure can trigger an extended rescission period of up to four years.  Mass. Gen. Laws ch. 140D, § 10(i)(1).

### 1.  Disclosure

The Code of Massachusetts Regulations specifies that creditors must provide "notice that conforms with the model forms in Appendix H of Regulation Z, as appropriate, or a substantially similar notice."  209 Mass. Code Regs. 32.23(2)(b).  Certain information must be "clearly and conspicuously" disclosed in the notice.  Mass. Gen. Laws ch. 140D, § 10(a); 209 Mass. Code Regs. 32.23(2)(a).

The "general" model form from Appendix H of Regulation Z, which informs the borrower of the right to rescind the entire loan amount, is designated as model form "H-8."  Rescission Model Form, 12 C.F.R. § 226.23 app. H.  The model form for "same creditor refinancing," which informs the borrower that only the increase over the prior loan may be rescinded, is designated as model form "H-9."  Refinancing with Original Creditor, 12 C.F.R.

---

[3] The law includes some "wiggle room" for creditors, such that if the amount disclosed as the finance charge does not vary by $35 or more from the actual finance charge, it will be considered accurate and cannot trigger rescission.  Mass. Gen. Laws ch. 140D, § 10(i)(2).

§ 226.23 app. H.

   C.    **Triggering Extended Rescission**

      1.    **Count I: Adequacy of Delivery of the Notice of
            Right to Cancel**

         a.    **Using a Different Form than the Regulation Z
               Form Is Not a <u>Per Se</u> Violation of MCCCDA.**

The Cromwells first argue that because they did not receive
the specified model form, there was a <u>per se</u> violation of MCCCDA,
which must result in triggering extended rescission.   Appellee's
Br. 12.   The First Circuit has previously said that this argument
is a "non-starter".   <u>Santos-Rodriquez</u> v. <u>Doral Mortg. Corp.</u>, 485
F.3d 12, 15 (1st Cir. 2007) (rejecting plaintiff's argument that
"that if the creditor does not provide the appropriate [model]
form, the borrower shall have rescission rights" (internal
quotations omitted)).   While the Cromwells may argue that in a
case like this – where the creditor is a new lender (as opposed
to a same creditor refinancing) –  the use of form H-9 is a
violation as matter of law, their argument based on the statutory
language, which approves "comparable written notice," cannot
stand and need not be discussed at length.   <u>See</u> <u>id.</u>

         b.    **The Bankruptcy Judge Erred in Holding that
               Receipt of Only One Copy of the Notice of
               Right to Cancel Triggers Rescission**

In their appeal, CountryWide argues that the Bankruptcy
Judge erred in holding that the Cromwells' receipt of only a
single copy of the notice of right to cancel triggered the

extended rescission period.  Opening Br. Appellant CountryWide &
MERS ("Appellants' Br.") 13-14, ECF No. 5.  CountryWide's
position is supported by an explicit holding by this Court in
King v. Long Beach Mortgage, 672 F. Supp. 2d 238 (D. Mass. 2009).

The Cromwells argue that King is unsupported, and ought not
be followed.  Appellee's Br. 9.  To the contrary, the relevant
holding in King has been followed by three other district judges
in Massachusetts.  Kassner v. Chase Home Fin., LLC, No. 11-10643-
RWZ, 2012 WL 260392, at *4 (D. Mass. Jan. 27, 2012) (Zobel, J.);
Ferreira v. Mortgage Elec. Registration Sys., Inc., 794 F. Supp.
2d 297, 303 (D. Mass. 2011) (Gorton, J.); McDermott v. Mortgage
Elec. Registration Sys., Inc., No. 08-12121-GAO, 2010 WL 3895460,
at *7 (D. Mass. Sept. 30, 2010) (O'Toole, J.); see also Sumner v.
Mortgage Elec. Registration Sys., Inc., No. 11-11910-DJC, 2012 WL
3059429, at *5 (D. Mass. July 26, 2012) (Casper, J.) (citing
King).  The First Circuit recently referenced King in a similar
decision and agreed with its conclusion.  McKenna v. Wells Fargo
Bank, N.A., --- F.3d ---, No. 11-1650, 2012 WL 3553475, at *7
(1st Cir. Aug. 16, 2012).

In King, this Court reasoned based on the text of the
regulations:

> It is reasonable to ask why Congress would impose a duty
> to deliver two copies of the Notice but not extend the
> rescission right to three years when that duty is
> breached by delivery of but a single copy.  The answer
> lies in the fact that rescission is not the only remedy
> for violations of the duties imposed by TILA.  Congress

11

envisaged other remedies or "[a]dditional relief . . . for violations of [TILA] not related to the right to rescind."  15 U.S.C. § 1635(g).  In other words, the failure to provide two copies of the Notice still constitutes a violation of TILA for which other remedies (such as damages) may be awarded.  <u>Under the plain meaning of Regulation Z, however, this kind of violation simply does not trigger an extension of the rescission right to three years</u>.

<u>King</u>, 672 F. Supp. 2d at 250-51 (emphasis added).

In this case, Bankruptcy Judge Hillman explained at length why he disagreed with the Court's decision in <u>King</u>, <u>In re Cromwell</u>, 461 B.R. at 122-26, and another bankruptcy judge recently followed <u>In re Cromwell</u> in another case.  <u>In re Alger</u>, 464 B.R. 519, 523-24 (Bankr. D. Mass. 2012) (Hoffman, Bankr. J.) (explicitly rejecting the holding of <u>King</u>); <u>see also</u> <u>Sumner</u>, 2012 WL 3059429, at *5 (comparing <u>Ferreira</u> and <u>In re Cromwell</u>). Nonetheless, the bankruptcy opinion is in direct opposition to this Court's precedents as well as <u>McKenna</u> v. <u>Wells Fargo Bank</u> and must be reversed.

### 2.   Count II: CountryWide Did Not Adequately Disclose the Cromwells' Rescission Rights

The Bankruptcy Judge also concluded that the use of form H-9 instead of H-8 for the notice of right to rescind did not clearly and conspicuously disclose the effects of rescission to the borrowers.  Courts are to evaluate the notices for objective reasonableness, not subjective understanding.  <u>Palmer</u> v. <u>Champion Mortg.</u>, 465 F.3d 24, 28 (1st Cir. 2006) (adopting "the vantage point of a hypothetical average consumer – a consumer who is

neither particularly sophisticated nor particularly dense");
McDermott, 2010 WL 3895460, at *6; accord Melfi v. WMC Mortg.
Corp., 568 F.3d 309, 312 (1st Cir. 2009).  "The average consumer
test adopted by the First Circuit provides a higher tolerance
level for non-confusing technical mistakes in disclosures to
consumers, just as Congress intended." King, 672 F. Supp. 2d at
249.  "Ordinarily, whether TILA disclosures are confusing to the
average consumer is a question of fact for the fact-finder." Id.
at 249-50 (citations omitted).  Questions of fact are reviewed
for clear error.  In re Callahan, 442 B.R. at 5.

     Regulation Z lists the five elements of clear and
conspicuous disclosure:

>     The notice shall be on a separate document that
>     identifies the transaction and shall clearly and
>     conspicuously disclose the following:
>
>     (i)   The retention or acquisition of a security interest
>           in the consumer's principal dwelling.
>     (ii)  The consumer's right to rescind the transaction.
>     (iii) How to exercise the right to rescind, with a form
>           for that purpose, designating the address of the
>           creditor's place of business.
>     (iv)  The effects of rescission, as described in
>           paragraph (d) of this section.[4]
>     (v)   The date the rescission period expires.

12 C.F.R. § 226.23(b)(1); Santos-Rodriquez, 485 F.3d at 16.

     The central question here is whether the notice clearly and
conspicuously gave notice of the effects of rescission.  Both

---

[4] 12 C.F.R. § 226.23(d) is substantively identical to 209
CMR 32.23(4), included infra at Section II.D.

parties (and Judge Hillman) appropriately discuss <u>Santos-Rodriquez</u> v. <u>Doral Mortg. Corp.</u>, 485 F.3d at 18.  In <u>Santos-Rodriquez</u>, the First Circuit concluded that for a <u>refinancing transaction</u> with the original lender, form H-8 sufficiently disclosed the terms of rescission, even though form H-9 would have been the appropriate form and would obviously have been better.  <u>Id.</u> at 17-18.  Judge Hillman noted that this was entirely consistent with finding that using an H-9 form in a <u>new</u> consumer credit mortgage would not clearly and conspicuously disclose the terms of rescission.  <u>In re Cromwell</u>, 461 B.R. at 129 (noting that the Cromwells were not refinancing with an original lender).  The Cromwells, of course, agree.  Appellees' Br. 15.

CountryWide and MERS rely on <u>McKenna</u> v. <u>First Horizon Home Loan Corp.</u>, 537 F. Supp. 2d. 284, 290 (D. Mass. 2008) (Saris, J.), where the court ruled that a notice combining terms of both forms H-8 and H-9 was sufficiently clear and conspicuous in a new financing.  <u>Id.</u> (noting that while the notice was "not perfect," it required a "strained reading" to suggest that rescission would only cancel additional credit, not the whole loan).  In <u>First Horizon</u>, however, the hybrid notice form included language unequivocally stating the correct rescission terms, as well as the confusing (and inapplicable) language referring to refinancing.  <u>Id.</u> at 285 ("If you cancel the transaction, the

14

mortgage/deed of trust is also cancelled.").

Here, CountryWide provided only form H-9, and as the Bankruptcy Judge explained, the H-9 form does not clearly explain what happens in case of rescission.  In re Cromwell, 461 B.R. at 127-29.  The correct H-8 form states that:

> If you cancel the transaction, the [mortgage/lien/security interest] is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the [mortgage/lien/security interest] [on/in] your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

12 C.F.R. Part 226.23 app. H (emphasis added).  The incorrect H-9 form states:

> If you cancel this new transaction, it will not affect any amount that you presently owe.  Your home is the security for that amount.  Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit.  We must also return any money you have given to us or anyone else in connection with this new transaction.

In re Cromwell, 461 B.R. at 127 (emphasis added).

The difference here is apparent, albeit confusing.  Under form H-9, the notice does not inform the borrowers that the security interest in their house will be cancelled upon rescission.  Instead, used in an original transaction, form H-9 suggests that even after rescission, the security interest in the house will remain.  In effect, using form H-9 with a new borrower (as opposed to a refinancing buyer), flatly contradicts the

actual terms of a rescission with a new borrower, id. ("If you cancel the transaction, the [mortgage/lien/security interest] is also cancelled."), by notifying the consumer that their house will be the security interest for their debts (whatever those debts might be).  As such, an average consumer could not understand the terms of rescission, much less find them clear and conspicuous.

This Court defers to the Bankruptcy Judge's factual findings here, which are not clearly erroneous for the reasons explained above.  See King, 672 F. Supp. 2d at 249-50 (noting that it is a matter of fact whether a TILA disclosure notice is clear and conspicuous).

Therefore, the Bankruptcy Judge correctly held that the use of form H-9 for a new financing transaction regulated by MCCCDA did not clearly and conspicuously disclose the terms.  Thus, the extended rescission period is triggered, and this Court must review the subsequent rulings of the Bankruptcy Judge.  See Mass. Gen. Laws ch. 140D, § 10(i)(1)(b).

### D.    The Court Approved Rescission Voided the Security Interest

CountryWide argues that the Bankruptcy Judge erred in finding that the Court need not condition rescission of the CountryWide loan on the Cromwells tendering back the proceeds of that Loan.  Appellants' Br. 21-22.  The Bankruptcy Judge's ruling concluded that the rescission automatically voided the

16

transaction.   Thus the CountryWide Loan is now an unsecured loan,
and will receive treatment equal to that of other unsecured
creditors in the ongoing bankruptcy proceedings.   See In re
Cromwell, 461 B.R. at 131.   CountryWide points out that this is a
minority position, and one on which Judge Hillman was previously
reversed by Judge Zobel.   Appellants' Br. 22 (citing Wells Fargo
Bank, N.A. v. Jaaskelainen, 407 B.R. 449, 459-60 (D. Mass. 2009)
(Zobel, J.)).

At common law, of course, one who seeks rescission must
tender back the benefits of the contract sought to be rescinded.
E.g., Bellefueille v. Medeiros, 335 Mass. 262, 266 (1957) (noting
that "[t]his requirement is applied with considerable strictness
at law, but the rule is more liberal in equity" (citations
omitted)).   But TILA and MCCCDA amend common law rescission, and
suits based on the statutes must be based on the statute's
requirements.

In 15 U.S.C. § 1635 and Massachusetts General Law chapter
140D, section 10, which govern the obligor's right to rescind in
transactions involving dwellings, the statute states that in such
a rescission, the creditor must tender before the obligor, id.
§1635(b).   Those sections also provide that "[t]he procedures
. . . shall apply except when otherwise ordered by a court."
Accord Belini v. Washington Mut. Bank, FA, 412 F.3d 17, 25 n.3
(1st Cir. 2005) ("As we noted in Large v. Conseco Fin. Servicing

Corp., 292 F.3d 49, 55-56 (1st Cir. 2002), TILA alters common law rescission by forcing the creditor to tender before the debtor, although the court has the power under section 1635(b) to change these procedures where appropriate.").

The text of the implementing regulations fleshed out details for the statute, including a provision that seems to settle the question whether the security interest voids automatically upon rescission, or ought be contingent on the obligor tendering back the money borrowed. See 209 Mass. Code Regs. 32.23(4). The regulations state:

> (a) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
>
> (b) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
>
> (c) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under 209 CMR 32.23(4)(b). When the creditor has complied with 209 CMR 32.23(4)(b), the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.
>
> (d) The procedures outlined in 209 CMR 32.23(4)(b) and

18

(c) may be modified by court order.

209 Mass. Code Regs. 32.23(4).[5]

The Bankruptcy Judge relies on section (d), which gives courts power to modify the procedures in rescission from sections (b) and (c), but seemingly does not include authority to alter section (a).  In re Cromwell, 461 B.R. at 130-31.  In Wells Fargo Bank, N.A. v. Jaaskelainen, Judge Zobel rejected this reading of the statute and focused on the legislative history[6], as well as courts ability to fashion equitable remedies.  407 B.R. at 459-60.

---

[5] The parties do not challenge the legitimacy of the regulations and, as Judge Hillman notes, they are subject to highly deferential review.

[6] Judge Zobel cites the Ninth Circuit in quoting a Senate Report to support her view.  Jaaskelainen, 407 B.R. at 459 (citing Yamamoto v. Bank of New York, 329 F.3d 1167, 1173 (9th Cir. 2003) (arguing that congressional intent requires that "the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required under the Act." (quoting S. Rep. No. 96-368, at 29 (1980), reprinted in 1980 U.S.C.C.A.N. 236, 264-65))).  The same Senate Report (which is not a report on the final conferenced public law) also states that "the federal regulatory agencies will make clear to both creditors and consumers their respective obligations under the Act's rescission procedures."  S. Rep. No. 96-368 (1980), reprinted in 1980 U.S.C.C.A.N. 236, 265.  CountryWide argues that the Senate report must control because court-ordered modifications are "to insure the consumer meets his obligations."  Reply Br. Appellants CountryWide Home Loans, Inc. MERS ("Appellant's Reply") 12, ECF No. 9 (citing S. Rep. No. 96-368, at 29).  This obfuscates the point that the Cromwells still have an obligation to CountryWide, albeit one that will be subject to the normal rules for unsecured creditors in a bankruptcy.

Judge Hillman explains in detail his reasons for disagreeing with Judge Zobel's opinion in Jaaskelainen, most critically that the court ought not rely on legislative interpretation when the regulation itself is textually clear.  In re Cromwell, 461 B.R. at 134 (citations omitted)).  Nor is Jaaskelainen settled law. Several bankruptcy judges in this district have cited to Jaaskelainen for basic propositions regarding MCCCDA and TILA, and two bankruptcy judges have discussed particularly why they disagree with the opinion.  In re Cromwell, 461 B.R. at 133; In re Giza, 428 B.R. 266, 274 (Bankr. D. Mass. 2010) (Boroff, Bankr. J.).  Jaaskelainen has not been adopted by another district judge in Massachusetts.  See Ferreira, 794 F. Supp. 2d at 303 (declining to address Jaaskelainen where the issue was not before the court).

Although no longer a matter of first impression in the circuit, the First Circuit has not addressed this issue.  See Jaaskelainen, 407 B.R. at 460.  The closest First Circuit language is from Large, 292 F.3d at 54-55, which suggests that Judge Hillman has the better argument:

> The natural reading of [TILA regulations on rescission] is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. If a lender disputes a borrower's purported right to rescind, the designated decision maker . . . must decide whether the conditions for rescission have been met.

20

_Id._  After _Large_, courts in this circuit must acknowledge that

rescission is only appropriate where it is undisputed or a judge

finds the necessary conditions.  _Id._  Implicit in _Large_ is the

concept that the statutes control the results of rescission.

"Rescission under the TILA is 'automatic' [only] in the sense

that, in contrast to common law rescission, the borrower need not

first return the loan proceeds received under the agreement to

effect a rescission."[7]  _Id._ at 55.

This Court is not the first court to accept this logic.  As

far back as 1983, a Bankruptcy Judge ruled:

> [w]e do not think there is much merit to the argument
> that the creditor's obligation to release the mortgage is
> conditioned upon the debtor's obligation to first return
> the property delivered.  Such a requirement has been
> consistently rejected.  The statutory language clearly
> contemplates a tender by the debtor after the creditor
> has performed its obligation.

_In re Chancy_, 33 B.R. 355 (Bankr. N.D. Okla. 1983).

Additionally, a district court concluded recently that it could

not "override the voiding of the security interest which occurs

by operation of law upon an effective rescission."  _Citron_ v.

_Wachovia Mortg. Corp._, No. 8:10-CV-1790, 2011 WL 2183102, at *2

---

[7] In _Large_, the First Circuit discussed whether rescission
is "automatic" in TILA at some length, however, _Large_ addressed
the question whether the security interest is voided when the
borrower asserts the right of rescission.  292 F.3d at 54-55.
The court concluded that rescission was not "automatic" because
the rescission must be undisputed, or subject to a court-like
(i.e., judge or arbitrator) finding.  _Id._

(M.D. Fla. June 3, 2011).  Judge Hillman had also previously held that "rescission by an obligor is not conditioned by tender or payment in the context of a bankruptcy case."  <u>In re Myers</u>, 175 B.R. 122, 129 (Bankr. D. Mass. 1994).

CountryWide also cites the First Circuit in <u>First Horizon</u> as stating that although "Congress made manifest that although it had designed the TILA to protect consumers, it had not intended that lenders would be made to face overwhelming liability for relatively minor violations."  475 F.3d at 424; <u>cf.</u> <u>Large</u>, 292 F.3d at 55-56 ("The purpose of the TILA's reordering of common law rescission rules is to put the consumer in a stronger bargaining position.").  In <u>First Horizon</u>, however, the First Circuit was discussing a potential $200,000,000 class action liability.  475 F.3d at 424.  That is "overwhelming liability," in rather stark contrast to the sums in this case, where a lender stands to lose the value of a single home loan, after a judge or administrative officer has found a violation, and the borrower entered bankruptcy.

While rescission in this case may be a harsh sanction to impose on a bank for a potentially inadvertent mistake,[8] this interpretation of the law makes sense because in a "run of the mill" case of rescission, there would be little-to-no harm to the

---

[8] Of course, such liability is not novel - tort law routinely establishes significant liability for acts that are merely careless.

creditor.  The Regulations state that, unless a consumer waives
the right of rescission, "no money shall be disbursed other than
in escrow, . . . until the rescission period has expired and the
creditor is reasonably satisfied that the consumer has not
rescinded."  209 Mass. Code. Regs. 32.23(3).  If a borrower
decides to rescind within the statutory three days, the security
interest is void, and the bank is not harmed if it complied with
the regulation prohibiting disbursement until the rescission
period expires.  It is only in the (hopefully) rare cases where
the bank failed appropriately to disclose terms or give notice
that extended rescission could void the transaction with a
prospect that a security interest may be extinguished.

E.    The Bankruptcy Court's Authority to Rule in Equity

CountryWide's remaining argument boils down to this: It's
just not fair!  "Equity [should] override[] the result that would
come from the strict application of legal principles."  Thorp
Loan & Thrift Corp v. Buckles, 189 B.R. 752, 765 (Bankr. D. Minn.
1995).  The Bankruptcy Judge countered that he had no authority
to exercise equitable powers on the transaction after it is
voided.  In re Cromwell, 461 B.R. at 134-35.  This was error.
The statute and regulations clearly provide that authority.
Mass. Gen. Laws ch. 140D, § 10(d) (authorizing regulations that
permit modification or waiver of rescission); 209 Mass. Code.
Regs. 32.23(4)(d) (stating that the procedures for rescission in

the regulation "may be modified by court order"). Although the bankruptcy court could not condition rescission in these circumstances on the tender by debtors of the loan, "[t]he [other] procedures outlined in [the regulations] may be modified by court order." 209 Mass. Code. Regs. 32.23(4)(d). Judge Hillman noted that "a bankruptcy court's general and equitable power must and can only be exercised within the confines of the Bankruptcy Code," In re Cromwell, 461 B.R. at 135 (internal citations omitted), but this merely confirms his conclusion that CountryWide must accept limitations on recovery when a consumer goes bankrupt.

Although the bankruptcy court does have authority to act, this would seem to make little difference as Judge Hillman reasoned that requiring the bankruptcy court here to fashion an equitable solution involving a "condition of full tender would undermine the purposes of the Bankruptcy Code and do violence to its provisions," id., and, not surprisingly, he noted that even if this Court required him to impose appropriate equitable conditions on the Cromwells' right to rescind, "the result in this case would be the same." Id. at 136 n.213.

This Court re-affirms that the Bankruptcy Court here does have statutory authority to amend the process of rescission in innovative ways. As the Bankruptcy Judge found that a full tender in this case would undermine the purposes of the

24

Bankruptcy Code, then a just conclusion might be that full tender is inappropriate in these circumstances.  Such a conclusion of fact is reasonable, and would hardly run afoul of the clear error standard for reversal by this Court.  See In re Callahan, 442 B.R. at 5.

### F.   The Cromwells' Cross Appeal

The Cromwells cross-appealed a single issue, whether the Bankruptcy Judge erred in ruling that the sum of $30,039.69, representing accrued loan interest which had been capitalized in two loan modification agreements, ought be included in the post-rescission loan balance.[9]  In re Cromwell, Bankr. No. 09-01070, Pls.' Notice Cross-Appeal, ECF No. 174 (Bankr. D. Mass) (Hillman, Bankr. J.).

After a rescission governed by Massachusetts General Law chapter 140D, section 10, a borrower "is not liable for any finance or other charge . . . ."  The security interest "including any such interest arising by operation of law, becomes void upon such a rescission."  Id. § 10(b).

The Bankruptcy Judge concluded that rescission in this case

---

[9] CountryWide erroneously argues that the appeal is improper because the Cromwells argued the issue in their opening brief, along with replies to CountryWide's arguments on appeal. Appellants' Reply 13-14.  The Cromwells correctly followed the rules of bankruptcy procedure, which state "If the appellee has filed a cross appeal, the [responding] brief of the appellee shall contain the issues and argument pertinent to the cross appeal, denominated as such, and the response to the brief of the appellant."  Fed. R. Bankr. P. 8009.

must rescind the financing as subsequently modified.  <u>In re</u> <u>Cromwell</u>, 461 B.R. at 137.  The Cromwells offered "no compelling explanation why those loan modification agreements should not be given effect." <u>Id.</u>  Instead, the Cromwells executed two binding agreements for the express purpose of modifying their loan to treat the interest as principal.  <u>Id.</u>

The bankruptcy court "sitting as a court of equity, is well-suited to decide a debtor's ability to pay his or her creditors, including those creditors whose claims may be repaid in whole or in part on account of their violations of TILA and MCCCDA." <u>In re Giza</u>, 428 B.R. at 275.  Although the MCCCDA could be read to permit the avoidance of these capitalized interests; here, the Bankruptcy Judge concluded that the Cromwells ought be required to honor their loan modifications, even if the terms of the MCCCDA permit them to turn the original transaction into an unsecured claim in bankruptcy.  <u>In re Cromwell</u>, 461 B.R. at 136-37.  The Bankruptcy Judge did deduct nearly $37,000 in loan interest, late charges, and other payments to CountryWide.[10] <u>Id.</u>  Given the facts of this case, this outcome seems more

---

[10] Based on stipulated figures, the Bankruptcy Judge deducted the following amounts paid by the Cromwells: $19,515.10 in loan interest payments; $136.82 in late charges; $4,529.59 applied to the loan escrow account; and $12,805 paid to CountryWide and other third parties in connection with the refinancing transaction.  <u>In re Cromwell</u>, 461 B.R. at 136-37.  As the starting principal loan balance as of May 2, 2011 was $333,954.47, the Bankruptcy Judge found an adjusted balance of $296,967.96, owed by the Cromwells to CountryWide.  <u>Id.</u> at 137.

equitable than voiding the $30,039.69 of capitalized interest, and may be a small step towards helping CountryWide recoup its losses from the bankruptcy proceeding.  This Court affirms the Bankruptcy Judge's calculations of CountryWide's claim.

> **G.   The Cromwells Are Entitled to Costs and Reasonable Attorneys Fees to Be Determined by the Bankruptcy Court**

The MCCCDA provides for damages where a creditor fails to comply with any requirement of the statute or regulations.  Mass. Gen. Laws ch. 140D, § 32(a).  These damages include actual damages, id. § 32(a)(1), statutory damages of not less than $200 and not greater than $2000, id. § 32(a)(2) and, in successful actions to enforce rescission, costs and reasonable attorneys' fees as determined by a court, id. § 32(a)(3).  Statutory damages are limited to single damages where, like here, there are multiple obligors.  Id. § 32(d).  Here, the Cromwells prevail on their claim for rescission and are entitled to reasonable fees.

## III. CONCLUSION

CountryWide's arguments ultimately fail because the MCCCDA makes automatic rescission a legitimate option for cases like this one: where consumers take out a loan against their dwelling, the bank errs in disclosure, and the consumer subsequently goes bankrupt.  Although harsh medicine for CountryWide, the rescission in this case will arise only in limited circumstances, and is consistent with the laws governing bankruptcies.

This Court REVERSES the Bankruptcy Court's holding that a

single copy of notice of right to cancel triggers rescission, AFFIRMS the Bankruptcy Court's holding that the notice in this case was not clear and conspicuous, AFFIRMS the Bankruptcy Court's order that the court could not condition rescission on tender by the Cromwells, and AFFIRMS the Bankruptcy Court's power in equity to determine the amount of CountryWide's claim.  The Court REMANDS the case to the Bankruptcy Court for an application for costs and attorneys' fees by the Cromwells.

   **SO ORDERED.**

                                        /s/ William G. Young
                                        WILLIAM G. YOUNG
                                        DISTRICT JUDGE